IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

JESUS BROWN,

                Plaintiff,

        vs.

ANDY TRAN, in his individual capacity;

                Defendant.

**4:18CV3115**

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's Motion for Summary Judgment (filing 76). For the reasons that follow, the motion is granted.

## I. BACKGROUND

Plaintiff Jesus Brown ("Brown" or "Plaintiff"), an inmate currently confined at the Lincoln Correctional Center ("LCC"), filed the operative Amended Complaint (filing 37) pursuant to 42 U.S.C. § 1983 on December 30, 2019, against Andy Tran ("Tran" or "Defendant") and Sergeant Shawn Millikan in their individual capacities. On November 13, 2020, the court granted a partial motion to dismiss which left only one claim remaining—an Eighth Amendment failure to protect claim against Tran.

In his Amended Complaint, Brown alleges Tran failed to protect him from an assault on March 18, 2017 at the Diagnostic and Evaluation Center ("DEC"). On that date, Brown returned to DEC from LCC segregation, escorted by Tran, and was told he would be placed in Housing Unit #9. (Filing 37 at CM/ECF pp. 2–3.) Brown asked Tran if he could speak to a sergeant on duty, and Tran told Brown to write an inmate request form. (*Id.* at CM/ECF p. 3.) Brown alleges he then told Tran that "he could not go into Unit #9 because of all the threats that he has received from other inmates that was in unit #7." (*Id.*) Tran again told Brown to

write an inmate request form to the floor sergeant about this and placed Brown in Unit #9.

After Brown entered Unit #9, he alleges he was approached by two inmates who said "your [sic] a sex offender and you cannot be in Unit #9 with them" and made remarks about seeing Brown's picture in the newspaper. (*Id*. at CM/ECF p. 3.) Brown alleges he began to walk towards Unit Officer Sorensen, and both inmates then started to assault Brown by hitting and kicking him in the face, back, and legs. (*Id*. at CM/ECF p. 4.) As a result of the assault, Brown had to be taken to an outside medical provider to get stitches for his face. (*Id*.)

Brown alleges Tran failed to protect him from a known substantial risk of serious harm in violation of Brown's Eighth Amendment rights. As relief, Brown seeks compensatory damages of $100,000 and punitive damages of $20,000. (*Id*. at CM/ECF p. 7.)

Tran filed his Motion for Summary Judgment on August 30, 2021. (Filing 76.) Along with his motion, Tran filed a Brief in Support (filing 78) and an Index of Evidence (filing 77.) Brown filed a Declaration and a Brief in Opposition on October 15, 2021. (Filing 82.) On October 22, 2021, Tran filed a Reply Brief (filing 88) and a Motion to Strike portions of Brown's Declaration (filing 89). Also, on October 21, 2021, Tran filed a motion to strike the Declaration of Tammy Kluver (filing 77-4) as it was incomplete and sought leave to supplement his Index of Evidence with a signed copy of the declaration. (Filing 87.) The court granted Tran's motion and the signed copy of the declaration was filed on November 1, 2021. (Filing 93.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility

2

of informing the court of the basis for the motion and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* "In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying 'facts that might affect the outcome of the suit.'" *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791–92 (8th Cir. 2011) (cleaned up). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

### III. SUMMARY JUDGMENT PROCEDURE

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

purposes of the motion only), admissions, interrogatory answers, or other materials; or

      (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

      This court's local rules further specify that "[t]he moving party must include in the brief in support of the summary judgment motion a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1). "The statement of facts should consist of <u>short</u> numbered paragraphs, each containing pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials that support the material facts stated in the paragraph." NECivR 56.1(a)(2) (emphasis in original). "The statement must not contain legal conclusions." *Id.*

      The opposing party's brief must include "a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). "Each material fact in the response must be set forth in a separate numbered paragraph, must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies, and, if applicable, must state the number of the paragraph in the movant's statement of material facts that is disputed." *Id.*

      A party's failure to comply with these requirements can have serious consequences: The moving party's "<u>[f]ailure to submit a statement of facts</u>" or "<u>[f]ailure to provide citations to the exact locations in the record supporting the factual allegations may be grounds to deny the motion for summary judgment</u>." NECivR 56.1(1)(a) (emphasis in original). On the other hand,"<u>[p]roperly referenced material facts in the movant's statement are considered admitted unless</u>

controverted in the opposing party's response." NECivR 56.1(1)(b)(1) (emphasis in original).

## IV. EVIDENCE PRESENTED

In this case, Tran's Brief in support of his motion for summary judgment contains a separate statement of material facts in accordance with the court's local rules with references to the record and properly authenticated evidence. (Filing 78 at CM/ECF pp. 2–6.) The documents referenced include the affidavits of Richard Randazzo and Tammy Kluver, who are both Nebraska Department of Correctional Services ("NDCS") employees at the DEC (filings 77-1 & 93), various NDCS documents authenticated by the previously-mentioned affidavits (filings 77-2, 77-3, & 77-5–77-9), Brown's Amended Complaint (filing 37), and a disc of video footage of the March 18, 2017 altercation between Brown and the other inmates (filing 77-11).[1]

Brown filed a brief (filing 82 at CM/ECF pp. 5–9) in opposition to Tran's Motion for Summary Judgment along with a Declaration (*id.* at CM/ECF pp. 1–2). Tran has filed a Motion to Strike enumerated paragraphs 2–9, inclusive, of Brown's Declaration because such paragraphs fail to comply with the requirements of Fed. R. Civ. P. 56(c)(4). Rule 56(c)(4) states that "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

---

[1] The court granted Defendant Tran's motion to file the disc of video footage under seal. (*See* Filings 75 & 79.) On March 31, 2022, the court entered an order (filing 95) and advised Defendant that the court was unable to view the video footage contained in sealed Exhibit 11 (filing 77-11). The court gave Defendant 20 days to advise the court whether arrangements could be made to allow the court to view Exhibit 11. On April 1, 2022, counsel for Defendant provided a disc containing a program that allowed the court to view Exhibit 11.

Upon careful consideration, the court will grant Tran's Motion to Strike in part and deny it in part. The court will consider paragraph 4 of Brown's Declaration as it concerns Brown's own statement and his dispute of Tran's characterization of that statement in Tran's Brief in Support. (*See* Filing 78 at CM/ECF p. 3, ¶ 7; Filing 82 at CM/ECF p. 1, ¶ 4.) The court, however, will disregard paragraphs 2, 3, and 5 through 9 of Brown's Declaration as Brown has failed to establish that the statements in those paragraphs are based on personal knowledge. *See Jain v. CVS Pharmacy, Inc.*, 779 F.3d 753, 758 (8th Cir. 2015) ("A declaration which does not satisfy [Fed. R. Civ. P. 56(c)(4)] may be stricken or disregarded.") In addition, Paragraphs 2, 7, 9, and the second sentence of paragraph 6 assert only conclusions of law and/or conclusory findings of fact, which cannot serve as the basis for granting or denying summary judgment. *See, e.g., Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir.1993) (self-serving, conclusory statements without support are not sufficient to defeat summary judgment); *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) ("[U]nsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." (internal quotation omitted)). Finally, paragraphs 3, 5, 7, 8, and the first sentence of paragraph 6 are not relevant as those paragraphs contain only Brown's observations or concerns regarding the exhibits provided by Tran in support of his summary judgment motion and do not contain statements that have any tendency to make a fact of consequence in Brown's Eighth Amendment failure to protect claim or Tran's qualified immunity defense more or less probable.

In his brief in opposition to summary judgment, Brown does not specify the numbered paragraphs in Tran's statement of material facts that he seeks to dispute, with the exception of one. (Filing 82 at CM/ECF pp. 5–9.) Brown specifically disputes paragraph 7 of Tran's statement of material facts (filing 78 at CM/ECF p. 3, ¶ 7) and refers the court to a specific exhibit (filing 77-7 at CM/ECF p. 1) upon which he relies. (Filing 82 at CM/ECF p. 7, ¶ 6.) Brown generally disputes and objects to the misconduct reports contained in Tran's Exhibits 5, 6, and 7 (filings

6

77-5 through 77-7), alleging they "are not a true and accurate reflection of what actually transpired" (filing 82 at CM/ECF p. 9), but Brown has failed to controvert any of Tran's statements of material fact related to the misconduct reports with "pinpoint references to affidavits, pleadings, discovery responses, deposition testimony . . . , or other materials upon which [Brown] relies." NECivR 56.1(b)(1); *see also* Fed. R. Civ. P. 56(c)(1). In light of this, Tran's statement of material facts, with the exception of paragraph 7, will be deemed admitted for purposes of deciding the motion. *See* NECivR 56.1(1)(b)(1); Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . ."). Although Brown is proceeding pro se, he is bound by and must comply with all local and federal procedural rules. NEGenR 1.3(g).

## V. RELEVANT UNDISPUTED MATERIAL FACTS

1.      Brown has been continuously incarcerated with the NDCS since on or about October 20, 2015, for committing two separate adult felony offenses: (1) DUI- .15+ or Refusal – 3 priors, and (2) Sexual Assault 1st Degree. (Filing 37 at CM/ECF p. 2; Filing 77-9 at CM/ECF p. 1.)

2.      From October 21, 2015 to January 11, 2017, Brown was housed in DEC Housing Unit ("HU") #4. (Filing 77-8 at CM/ECF p. 2–3.)

3.      On January 11, 2017, while housed in DEC HU #4, Brown was involved in an altercation in which he threatened an NDCS staff member and refused to lock down. (Filing 77-5 at CM/ECF p. 1.) As a result of this altercation, Brown was removed from DEC HU #4 and reassigned to DEC HU #6. (*Id.*; Filing 77-8 at CM/ECF p. 2.)

4.      Four days later, on January 15, 2017, while housed in DEC HU #6, Brown was involved in another altercation, this time involving another inmate. (Filing 77-6 at CM/ECF p. 1.) During this altercation, Brown began arguing with

another inmate, and Brown lunged across a table with a closed fist punch toward the other inmate. (*Id.*) NDCS staff had to use force to restrain Brown. (*Id.*) As a result of this altercation, Brown was removed from DEC HU #6 and reassigned to DEC HU #7. (*Id.*; Filing 77-8 at CM/ECF p. 2.)

5.     On March 16, 2017, while housed in DEC HU #7, Brown was again involved in an altercation with NDCS staff member Corporal Parks. (Filing 77-7 at CM/ECF p. 1.) Brown requested to be let out of his room to get some air as he claimed he could not breathe in his room. (*Id.*)

6.     After being allowed out of his cell, Brown claimed he could not breathe in his room "because of his new celly that moved in was stinking up the room." (*Id.*) Corporal Parks responded that Brown would have to return to his room and lock down after receiving his medications. (*Id.*)

7.     In response to Corporal Parks, Brown stated, "Can you move me up to nine?" to which Corporal Parks replied, "No, You're going to lock down." (*Id.*; Filing 82 at CM/ECF p. 1, ¶ 4.)

8.     Brown stated, "I'm not going back in that room, move me back on a cot," at which time, Corporal Parks informed Brown he would have to write an Inmate Interview Request ("IIR") to the Shift Sergeant to move housing units and that, in the meantime, Brown would be required to lock down in his assigned cell. (Filing 77-7 at CM/ECF p. 1.) Brown refused to lock down despite repeated requests, and so he was removed from DEC HU #7 and placed in segregation at LCC HU #C1. (*Id.*; Filing 77-8 at CM/ECF p. 1.)

9.     Two days later, upon his release from segregation, Brown was assigned to DEC HU #9. (Filing 77-8 at CM/ECF p. 1.)

10.     Brown alleges that he was assaulted by two other inmates upon his assignment to DEC HU #9, and that this assault is the basis for his claim against

Defendant Tran in this case. (Filing 37 at CM/ECF p. 2.) The assault that Brown alleges is the basis for his claim occurred on March 18, 2017. (*Id.*)

11.     Defendant Tran was employed as a Correctional Officer at DEC on March 18, 2017, and he was the Correctional Officer who was assigned to transport Brown from the segregation unit at LCC to DEC HU #9 on March 18, 2017. (*Id.* at CM/ECF pp. 2–3.)

12.     Brown alleges that Defendant Tran failed to protect him from the alleged assault when Brown informed Tran of his fear of being placed in DEC HU #9. (*Id.* at CM/ECF pp. 5–6.) Specifically, he alleges that prior to going into DEC HU #9, he told Defendant Tran that he could not be placed in DEC HU #9 because of threats he had received from other inmates in DEC HU #7. (*Id.* at CM/ECF p. 3.) Brown alleges that instead of refusing to place him in DEC HU #9, Defendant Tran informed Brown he could write an IIR to the floor Sergeant. (*Id.*)

13.     Brown entered DEC HU #9 at approximately 15:41:58. (Filing 77-11 at HU9 C.n3r, timestamp 15:41:58.)[2]

14.     Shortly after his entry into DEC HU #9, three inmates approached Brown and had a brief conversation with him. (Filing 77-11 at HU9 C.n3r, timestamp 15:42:25–15:43:10.) One of the three inmates was wearing a do-rag and then walked away from Brown, and Brown followed him. (*Id.* at HU9 C.n3r, timestamp 15:42:25–15:43:10; *Id.* at HU9 UC.n3r, timestamp 15:43:15–15:43:20.) The other two inmates talked amongst themselves as Brown followed after the inmate in the do-rag. (*Id.* at HU9 C.n3r, timestamp 15:43:10–15:43:20.)

15.     The inmate in the do-rag turned around as Brown followed him, and then Brown initiated a fight by throwing a punch to the inmate's face. (*Id.* at HU9

---

[2] Sealed Filing 77-11 contains three surveillance videos from various angles inside DEC HU #9 on March 18, 2017. They are labeled HU9 C.n3r, HU9 LC.n3r, and HU9UC.n3r, respectively, and the court will refer to the videos by those labels.

UC.n3r, timestamp 15:43:19–15:43:21.) After Brown initiated the fight, other inmates can be seen joining the fight. (*Id.* at HU9 UC.n3r, timestamp 15:43:21–15:43:31.)

16.     NDCS staff responded to the fight and gained control of all inmates involved within a matter of a few minutes. (*Id.* at HU9 UC.n3r, timestamp 15:43:32–15:44:13; *Id.* at HU9 LC.n3r, timestamp 15:43:56 – 15:44:13.)

17.     DEC does not have a policy or practice of identifying any of its housing units as "gang units," nor does DEC have a policy of never placing inmates who have been convicted of sex crimes in certain DEC housing units, including Housing Unit #9. (Filing 77-1 at CM/ECF p. 2, ¶ 6; Filing 77-2; Filing 77-3 at CM/ECF pp. 3, 8.)

18.     Per DEC policies and procedures, inmates who have committed multiple adult felony offenses may appropriately be housed in DEC Housing Units 4, 5, 6, or 9. (Filing 77-1 at CM/ECF p. 2, ¶ 7; Filing 77-3 at 8.)

19.     Per NDCS and DEC policies and procedures, a Corrections Officer does not have authority to change an inmate's housing assignment. A Corrections Officer who is transporting an inmate from one housing unit to another does so at the direction of his supervising officer, typically the Shift Lieutenant or Sergeant. Correctional Officers shall obey lawfully given direct orders by their supervisors and are subject to discipline for failure to do so. (Filing 77-1 at CM/ECF p. 2, ¶ 8; Filing 77-2; Filing 77-3.)

20.     The appropriate procedure for an inmate who does not wish to be placed in a specific housing unit is for the inmate to inform the housing unit's floor Officer, rather than the transporting officer, that he is refusing housing. (Filing 77-1 at CM/ECF p. 2, ¶ 9.)

10

21.     The floor Officer then informs the Shift Lieutenant or Sergeant of the inmate's refusal to accept his housing unit assignment. The inmate then confirms his refusal to the Shift Lieutenant or Sergeant and provides an explanation as to why he is requesting a different housing unit assignment. (*Id*. at CM/ECF p. 2, ¶ 10.)

22.     The Shift Lieutenant or Sergeant then decides where the inmate should be placed. (*Id*. at CM/ECF p. 2, ¶ 11.)

## VI. DISCUSSION

### A. Qualified Immunity

Tran argues that he is entitled to summary judgment because the undisputed material facts fail to establish that he violated Brown's Eighth Amendment rights and he is immune from suit in his individual capacity under the doctrine of qualified immunity. "Qualified immunity shields government officials from liability for civil damages and the burdens of litigation 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *McKenney v. Harrison*, 635 F.3d 354, 358 (8th Cir. 2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Stated another way, qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful in light of clearly established law and the information that the defendant possessed." *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000) (internal quotation and citation omitted). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id*. (internal quotation and citation omitted).

Qualified immunity requires a two-part inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged

misconduct. *Nance v. Sammis*, 586 F.3d 604, 609 (8th Cir. 2009). If no reasonable fact-finder could answer yes to both of these questions, the official is entitled to qualified immunity. *Id.* "Courts may exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009).

Accordingly, in reviewing this motion, the court will first examine whether the facts reasonably show that Tran violated Brown's constitutional rights. If the facts do not show a violation, the court need not proceed further with the qualified immunity analysis.

**B. Failure to Protect**

Brown claims that Tran failed to protect Brown from an assault by two inmates in HU #9 at the DEC on March 18, 2017, after Brown informed Tran of his fear of being placed in HU #9. (*See* Filing 37 at CM/ECF pp. 5–6.) "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, prison officials do not incur constitutional liability for every injury suffered by a prisoner. *Id.* at 834. In order to prevail on an Eighth Amendment failure-to-protect claim, an inmate must make two showings. First, the inmate must demonstrate that he or she is "'incarcerated under conditions posing a substantial risk of serious harm.'" *Jensen v. Clarke*, 73 F.3d 808, 810 (8th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The second requirement concerns the state of mind of the prison official who is being sued. *Id.* It mandates that the inmate show that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id.* (internal quotation omitted). This subjective requirement is necessary because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id.* (internal quotation omitted).

there was no other "information or concerns sufficiently specific to make that official aware that a substantial risk of serious harm existed.").

The undisputed material evidence in this case shows that Brown communicated nothing more to Tran than vague, general fears about threats to his safety if he was placed in HU #9. Brown's Amended Complaint states he told Tran he had received threats from inmates in DEC HU #7. (Filing 37 at CM/ECF p. 3.) However, Brown did not provide any information about specific threats of harm from specific inmates to Defendant Tran. As an inmate with multiple adult felony offenses and multiple misconduct reports involving aggression or violence, Brown was an appropriate candidate for placement in HU #9, and Tran would have no reason to suspect a substantial risk of serious harm to Brown based on placement in HU #9 alone. (Filing 77-1 at CM/ECF p. 2, ¶¶ 6 – 7; Filing 77-3 at CM/ECF p. 8; Filing 77-5; Filing 77-6; Filing 77-7.) Moreover, there is no evidence that Tran, as a Corrections Officer at DEC, had any influence or control over the decision on where Brown could or should be housed. *See Axelson v. Watson*, 999 F.3d 541, 546 (8th Cir. 2021) (defendants did not act with deliberate indifference where defendants did not make, and had no power to circumvent, decision to place plaintiff inmate in general population where inmate was attacked). The record establishes that housing assignment determinations are the responsibility of the Shift Supervisor, Intake Sergeant, or Shift Lieutenant, and that Tran, as a transporting Corrections Officer, did not have authority to change Brown's housing assignment and was required to transfer Brown to HU #9 as directed by his supervisors. (Filing 77-1 at CM/ECF p. 2, ¶ 8; Filing 77-2; Filing 77-3.)

Finally, the record evidence shows that Brown was the initial aggressor in the March 18, 2017 fight with the other inmates that led to his claimed damages. (Filing 77-11 at HU9 C.n3r, timestamp 15:41:58–15:43:20; *Id.* at HU9 UC.n3r, timestamp 15:43:15–15:43:31.) Brown claims that he initiated the fight because "[t]he one inmate requested for the Plaintiff to go into a cell and fight where they couldn't be seen from the guards," so Brown felt he had to stay out in the open and protect himself. (Filing 82 at CM/ECF p. 8, ¶ 10; *see also Id.* at CM/ECF p. 2, ¶ 9.)

While the court need not consider Brown's unsubstantiated, self-serving allegations, the court notes, for the sake of completeness, that Brown's allegations are insufficient to create a genuine issue of material fact. The statements Brown alleges the other inmates made to him were all made after Brown had been transferred to HU #9. Brown has offered no evidence establishing that Tran either overheard these particularized threats or that, after the threats occurred, Brown informed Tran of these more particularized threats. Nor is there any evidence that Tran was present at the time of the physical altercation. Therefore, Brown's statements on these matters fail to raise a genuine issue of material fact to defeat summary judgment.

## C. Conclusion

The court finds that the undisputed material evidence establishes that Tran did not deliberately disregard a substantial risk of serious harm to Brown, and Brown's Eighth Amendment failure to protect claim against Tran fails as a matter of law. "[I]f the court finds no constitutional violation occurred, the analysis ends and the issue of qualified immunity is not addressed. This is not to say, however, the defendant official is entitled to qualified immunity. Rather, if no constitutional violation occurred, plaintiff's claim fails as a matter of law because plaintiff did not prove an essential element of the § 1983 claim." *Ambrose v. Young*, 474 F.3d 1070, 1077 n.3 (8th Cir. 2007) (citations omitted). Alternatively, because there was no constitutional violation, Tran is entitled to qualified immunity. *See Payne v. Britten*, 749 F.3d 697, 707 (8th Cir. 2014) (Riley, C.J., concurring in part) ("For example, a district court could begin and end with the first question, granting qualified immunity because there was no constitutional violation.").

IT IS THEREFORE ORDERED that:

1.     Defendant Tran's Motion for Summary Judgment (filing 76) is granted.

2.      Defendant Tran's Motion to Strike (filing 89) is granted in part, and denied in part, as set forth in this Memorandum and Order.

3.      Judgment shall be entered by separate document.

Dated this 7th day of April, 2022.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge